RECEIVED

SEP 1 4 2012 *

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TODD MEYER, ET AL | CIVIL ACTION NO.: 11-CV-1650 |
| VERSUS | JUDGE DOHERTY |
| ARK OF LAFAYETTE INC, ET AL | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Currently pending before the Court is a motion for summary judgment [Doc. 13], filed by

defendant, Certain Underwriters at Lloyd's London ("Lloyds").  By way of its motion, defendant

seeks: (1) dismissal of the claims asserted against it by plaintiffs[1], arguing it has no "obligation to

provide coverage to its insured, the Ark of Louisiana, Inc. [sic][2] for the claims asserted by the

plaintiff [sic] in this case against the Ark"; and (2) a ruling by the Court that Lloyds has "no duty to

defend or indemnify the Ark of Louisiana [sic] against the claims made by plaintiff [sic]." [Doc. 13,

pp. 1, 2] The motion is opposed by defendant Ark of Lafayette, Inc. ("Ark") and by plaintiffs, Todd

Meyer and Bradley Manuel.[3] [Docs. 15, 19]

I.      **Background**

Plaintiffs Todd Meyer and Bradley Manuel filed this suit for personal injuries "arising from

---

[1]Plaintiffs brought their claim against Lloyds pursuant to the Louisiana Direct Action Statute, La. R.S. 22:1269(B).

[2]The correct name of Lloyds' insured is The Ark of Lafayette, Inc. [Doc. 6, p.1]

[3]Plaintiffs' opposition adopts the briefing submitted on behalf of Ark, with the exception of that portion of Ark's memorandum in opposition which argues the conduct at issue "could have been consensual."  Rather, plaintiffs deny the conduct was consensual. [Doc. 19, p.1]

1

a series of sexual assaults . . . which occurred between the dates of May 1, 2011 through September 21, 2011. . . ." [Doc. 1-5, ¶ II] According to the petition, during the aforementioned period of time, plaintiffs were "resident patients" at Ark's drug rehabilitation facility. [Id. at ¶ III] Plaintiffs allege while they were resident patients, they "were individually approached by the defendant, MR. VENOM, an employee of the facility, who offered drugs to the plaintiffs and then would then [sic] perform sexual acts on the plaintiffs while they were under the influence of narcotics." [Id. at ¶ III] Plaintiff Meyer alleges prior to entering Ark's program, he had made several attempts at completing a drug rehabilitation program but had failed, and thus "feared that he would be removed from the facility if he had resisted the advances of MR. VENOM."[4] [Id. at ¶ IV] According to the petition, plaintiff Manuel is "mentally challenged." [Id. at ¶ V] Mr. Manuel alleges "[s]hortly after his arrival, he was offered various controlled substances by the same MR. VENOM in return for allowing him to perform sexual acts on the Plaintiff."[5] [Id.]

Plaintiffs filed this suit in state court, naming as defendants: (1) "ARK OF LAFAYETTE, INC., EMPLOYEE KNOWN AS 'MR. VENOM'"; (2) Ark of Lafayette, Inc.; (3) Markel Insurance; and (4) Certain Underwriters at Lloyd's London (Ark's commercial general liability insurer). Neither Mr. Venom nor Markel Insurance have been served, nor has either made an appearance in this case.  The petition asserts claims for: "personal injuries" (presumably pursuant to La. Civ. Code

---

[4]According to the petition, Mr. Meyer voluntarily entered the Ark program, with the financial assistance of his family. [Doc. 1-5, ¶ IV]

[5]According to the petition, Mr. Manuel was sent to Ark by the courts of Beauregard and Calcasieu Parishes.  When Mr. Manuel reported the assault to his probation officer, he stated "that he would rather stay in jail than at ARK." [Doc. 1-5, ¶ V]

art. 2315), unlawful gender discrimination (pursuant to 42 U.S.C. § 1983[6]), and violation of the

"rights of Plaintiffs protected by the Louisiana and United States Constitutions." [Doc. 1-5, ¶¶ II, VI,

VII, XII]  Shortly after suit was filed, Lloyds removed the matter to this Court, on the basis of this

Court's federal question jurisdiction, 28 U.S.C. § 1331. [Doc. 1, ¶ 4] Thereafter, Lloyds filed this

motion for summary judgment.

## II.     Summary Judgment Standard

> A party may move for summary judgment, identifying each claim or
> defense--or the part of each claim or defense--on which summary judgment is sought.
> The court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter of
> law.

Fed. R. Civ. Proc. 56(a).  As summarized by the Fifth Circuit in Lindsey v. Sears Roebuck and Co.,

16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility
> of demonstrating the absence of an issue of material fact with respect to those issues
> on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477
> U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial,
> the movant may merely point to an absence of evidence, thus shifting to the non-
> movant the burden of demonstrating by competent summary judgment proof that
> there is an issue of material fact warranting trial. Id. at 322; see also, Moody v.
> Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell
> Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient
> evidence favoring the nonmoving party for a jury to return a verdict for that party"
> is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
> 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an element essential to that party's

---

[6]According to the petition (and admitted by Ark), "Ark and its employees are state actors within
the meaning of the Civil Rights Act, 42 U.S.C.A. 1983, et seq." [Doc. 1-5, ¶ VII; Doc. 6, ¶ VI]

case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990)(quoting Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986)).  The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

**III.     Applicable Law**

All parties appear to agree the insurance policy is to be interpreted in accordance with Louisiana law.  "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."

*Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also Fontenot v. Diamond B Marine Services, Inc.*, 937 So.2d 425, 428 (La. App. 4 Cir. 2006). "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract." *Cadwallader* at 580; La. Civ. Code art. 2045. "The parties' intent, as reflected by the words of the policy, determine [sic] the extent of coverage." *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 2007). As recognized by the Louisiana Supreme Court:

> The purpose of liability insurance is to afford the insured protection from damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied.
>
> It is equally well settled, however, that subject to the . . . rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy.

*Elliott v. Continental Cas. Co.*, 949 So.2d 1247, 1254 (La. 2007)(quoting *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1182-83 (La. 1994))(emphasis omitted).

The words of an insurance contract are not to be read in isolation, as "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. R.S. § 22:881. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047. "Words susceptible of different

meanings must be interpreted as having the meaning that best conforms to the object of the contract."

La. Civ. Code art. 2048.  "A provision susceptible of different meanings must be interpreted with

a meaning that renders it effective and not with one that renders it ineffective."  La. Civ. Code art.

2049.

> Ambiguous policy provisions are generally construed against the insurer and in favor of coverage.  Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

> If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.  Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.  The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader* at 580 (internal citations omitted; emphasis in original).

"When determining whether or not a policy affords coverage for an incident, it is the burden

of the insured to prove the incident falls within the policy's terms."  *Doerr v. Mobil Oil Corp.*, 774

So.2d 119, 124 (La. 2000).  "[O]n the other hand, the insurer bears the burden of proving the

applicability of an exclusionary clause within the policy."  *Id.*; *see also Martco Ltd. v. Wellons, Inc.*,

588 F.3d 864, 880 (5th Cir. 2009).  If the insurer "cannot unambiguously show an exclusion applies,

the Policy must be construed in favor of coverage."  *Martco Ltd. Partnership v. Wellons, Inc.*, 588

F.3d 864, 880 (5th Cir. 2009).

## IV.   Analysis

### A.   Absence of Defendant "Mr. Venom"

As a preliminary matter, Ark argues:

> [B]ecause the individual whose alleged misconduct lies at the heart of this litigaion, MR. VENOM, has not yet made an appearance and apparently has not yet been served, this Court should not rule upon LLOYD's Motion for Summary Judgment until issue is joined as to MR. VENOM.  In the Petition for Damages filed in the State Court from which this matter was removed, he is alleged to have been an employee of ARK at the time of the plaintiffs' claimed injuries.  As such, he is arguably an insured under the LLOYD'S "Certificates" until LLOYD'S can obtain judgment from this Court holding that it has no coverage for Mr. VENOM.  For that reason, this Court ought to defer action on the LLOYD'S Motion for Summary Judgment until MR. VENOM has appeared and has had an opportunity to oppose the LLOYD'S Motion.

[Doc. 15, p.3 (footnotes omitted)] Ark provides no legal support for its position.  In its reply brief,

Lloyds asserts its motion does not "seek[] a determination as to whether the policy covers Mr.

Venom," and that its motion "only seeks a determination of coverage for the Ark." [Doc. 22-1, p.7]

As stated by the Fifth Circuit, pursuant to Louisiana law:

> Coverage is determined by comparing the allegations in the complaint with the terms of the policy, and the court is to look only at the face of the complaint and the insurance contract in reaching this determination. The insurer has a duty to defend its insured if the complaint discloses the possibility of liability under the policy. Thus, if the complaint alleges a single claim against the insured that is covered by the policy, the insurer must defend the entire lawsuit, even those claims clearly excluded from coverage.

*Alert Center, Inc. v. Alarm Protection Services, Inc.*, 967 F.2d 161, 163 (5th Cir. 1992).  As this

Court is permitted to look *only* to the complaint and the policy to determine coverage, the Court

finds there is no reason to defer ruling.

**B.     Policy Exclusions**

Lloyds moves for summary judgment, arguing the alleged damages sought by plaintiffs are

excluded from coverage under the terms of the insurance policy, and therefore Lloyds has no duty

to defend Ark.  More particularly, Lloyds argues two exclusions prohibit coverage in this matter: (1)

the "Sexual Abuse and/or Molestation Exclusion," and (2) the "Assault and/or Battery Exclusion."

The "Sexual Abuse and/or Molestation Exclusion" provides in pertinent part:

> This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", medical payments or any injury, loss, or damages, including consequential injury, disease or illness, suit, expense or any other damages, for past, present or future claims, arising out of:
>
> > (1)   The actual or threatened abuse or molestation or licentious, immoral or sexual behaviour whether or not intended to lead to, or culminating in any sexual ac [sic], of any person, whether caused by, or at the instigation of, or at the direction of, or omission by, any insured, his employees, or any other person; or,
> >
> > . . . .
> >
> > (3)   Charges or allegations of negligent hiring, employment, investigation, supervision, reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph (1) above
>
> Abuse includes, but is not limited to, negligent or intentional infliction of physical, emotional or psychological injury/harm.
>
> Where there is no coverage, there is no defence; where there is no coverage or defence for you as an insured, there is no coverage or defence for an additional insured.

[Doc. 13-4, p.9]

The foregoing exclusion is broadly worded and excludes coverage for damages "arising out of . . . abuse or molestation or licentious, immoral or sexual behaviour. . . ."  The Fifth Circuit, in examining a similar, broadly worded "Sexual Action" exclusion, noted "the words 'arising out of,' when used within an insurance policy, are 'broad, general, and comprehensive terms effecting broad coverage.'" *American States Ins. Co. v. North River Ins. Co.*, 133 F.3d 363, 370 (5th Cir. 1998)(footnote omitted)(quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)).  "The words are understood to mean 'originating from,' 'having its

8

origin in,' 'growing out of' or 'flowing from.'" *Id.* Here, plaintiffs allege they were the victims of "sexual assaults" at the hands of Ark's employee, Mr. Venom.  Sexual assault clearly qualifies as "abuse or molestation or licentious, immoral or sexual behaviour," and thus, is outside of the scope of coverage.  Indeed, Ark does not argue "sexual assault" is an "occurrence" for which the Lloyds policy provides coverage.

Rather, Ark argues the allegations contained in the petition can be read to "suggest[] that the sexual activity may have been consensual,"[7] thus requiring Lloyd's to defend Ark in this suit. [Doc. 15, pp. 14-15]  Ark is incorrect.  As noted, the exclusion is written very broadly and excludes coverage for damages "arising out of . . . sexual behaviour," whether consensual or not.[8]  Thus, even if the sexual activity was, in fact, consensual, the policy would provide no coverage.[9]  *See also P.D. v. S.W.L.*, 993 So.2d 240, 247 (La. 1 Cir. 2008)(Where insured argued summary judgment for insurer, based upon sexual molestation exclusion, was inappropriate because genuine issue of material fact existed as to whether non-consensual sexual conduct occurred, court noted, "If it were established that non-consensual sexual conduct did not occur, there would be no tortious conduct giving rise to damages for which the policy would provide coverage.")

---

[7]More specifically, Ark argues the petition "can be reasonably interpreted to allege that the plaintiffs accepted drugs offered by MR. VENOM in return for then engaging in consensual sex with him." [Doc. 15, p.8]

[8]The Court finds the term "sexual behaviour," as contained in the exclusion, stands alone. However, the Court notes even if it were to find the term "sexual behaviour" is modified by the words "licentious" and/or "immoral," the Court would likely find the behavior at issue constitutes licentious *and* immoral sexual behavior.  Offering narcotics to drug rehabilitation patients entrusted to one's care, and then performing sexual acts on those persons while they are under the influence of narcotics, would certainly appear, on its face, to constitute immoral and licentious sexual behavior.

[9]The Court agrees with Ark that the issue of consent is material to application of the "Assault and/or Battery Exclusion"; however, the Court finds the issue of "consent" has no bearing on the applicability of the "Sexual Abuse and/or Molestation Exclusion."

Finally, Ark argues the sexual abuse exclusion is "unenforceably ambiguous," because it "is so sweepingly ambiguous in its wording" and so broad in scope "that *any* claim alleging 'physical, emotional or psychological injury/harm'" falls within the exclusion, without limiting "'abuse' to being something that occurs in a 'sexual behaviour' context at all." [Doc. 15, pp. 17-18 (emphasis in original)]. Essentially, Ark's argument is that because the portion of the exclusion which reads, "Abuse includes, but is not limited to, negligent or intentional infliction of physical, emotional or psychological injury/harm," contains no language "that limits 'abuse' to being something that occurs in a 'sexual behaviour' context," any claim for bodily injury would be excluded by the policy, whether or not "arising out of . . . sexual behaviour." [Doc. 15, pp. 17-18] Ark then provides certain hypothetical scenarios, not involving sexual behavior (*e.g.* a broken leg, being hit by a baseball), which Ark argues would be excluded from coverage under the sexual abuse exclusion of the policy.

The Court disagrees.  First, as noted, the language relied upon by Ark is contained in an exclusion entitled, "Sexual Abuse and/or Molestation Exclusion," which excludes from coverage damages arising out of sexual behavior.  However, generally, the policy does provide coverage for non-sexual bodily injury.  *See e.g.* Doc. 13-4, p.80 ("We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies.") Pursuant to Louisiana's rules of contractual interpretation, "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the whole."  La. Civ. Code art. 2050; *see also Succession of Barreca v. Weiser*, 53 So.3d 481, 491 (La. 4 Cir. 2010)("In other words, one portion of the policy should not be construed separately at the expense of disregarding other provisions.")  The sexual abuse exclusion necessarily requires a sexual component, or a primary purpose of the insurance policy (*i.e.* to provide coverage for non-sexual

bodily injury) would be negated.  Accordingly, the Court does not find the sexual abuse exclusion to be "unenforceably ambiguous."  *See also Cadwallader* at 579-80 ("An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.") Finally, the Court notes the facts before it, on their face, involve allegations of abusive sexual behavior, and thus the Court has no need to provide an advisory opinion as to whether or not the hypothetical factual scenarios submitted by Ark would or would not constitute covered occurrences pursuant to the "Sexual Abuse and/or Molestation Exclusion."

In light of the foregoing, the Court finds the policy provides no coverage for the damages claimed due to the application of the "Sexual Abuse and/or Molestation Exclusion."  Accordingly, the Court pretermits consideration of the issues raised by Ark regarding the policy's assault and/or battery exclusion.

### C.   "Separation of Insureds" Provision

Finally, Ark makes a rather strained argument that pursuant to a "Separation of Insureds'" clause contained in the policy, coupled with the fact that the petition appears to allege only vicarious liability as to Ark, none of the allegations in the Petition which might bar coverage as to Mr. Venom can be used to deprive Ark of coverage.[10] [Doc. 15, p.11] The Court finds this argument to be

---

[10]The "Separation of Insureds" clause in the Lloyds policy states in pertinent part:

[T]his insurance applies:

11

misplaced.  First, without Mr. Venom's sexual misconduct, plaintiffs would have no claims against Ark, as every harm allegedly caused to plaintiffs stems from and is integrally related to Mr. Venom's alleged acts.  Accordingly, coverage is precluded under the Lloyd's policy.  *See American States*, 133 F.3d at 370; *Sanchez v. Callegan*, 753 So.2d 403, 407 (La. 1 Cir. 2000); *Newby v. Jefferson Parish School Board*, 738 So.2d 93, 97 (La. 5 Cir. 1999).  Moreover, the cases cited by Ark in support of its position are factually distinguishable and in no way support Ark's argument.  Indeed, the only illumination these cases provide is that pursuant to the "Separation of Insureds" clause, each insured, namely Ark and its employees, "is entitled to coverage under the policy."  *Sanders v. Ashland Oil, Inc.*, 656 So.2d 643, 648 (La. 1 Cir. 1995)(addressing identical Separation of Insureds clause); *see also* Doc. 13-4, pp. 87, 88, 104.

**V.    Conclusion**

In light of the foregoing, the motion for summary judgment [Doc. 13] filed by Lloyds is GRANTED: accordingly, plaintiffs' claims against Lloyds are hereby DISMISSED, and the Court RULES Lloyds has no duty to defend or indemnify the Ark of Lafayette, Inc. against the claims made by plaintiffs in this matter.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ____*14*____ day of

---

      a.    As if each Named Insured were the only Named Insured; and

      b.    Separately to each insured against whom claim is made or "suit" is brought.

[Doc. 13-4, p.91]

September, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE